SUTTON, Circuit Judge, concurring.
I join Judge Batchelder's thoughtful opinion in full. I write separately to discuss the law-of-the-case doctrine and to explain why it does not apply to the prior panel's decision.
What we call law of the case has two parts. The first part, known as the "mandate rule," is vertical. A lower court "is bound by the decree [of a higher court] as the law of the case, and must carry it into execution according to the mandate." In re Sanford Fork & Tool Co. , 160 U.S. 247, 255, 16 S.Ct. 291, 40 L.Ed. 414 (1895). The rule springs from the hierarchical structure of our judicial system and leaves no room for discretion. If the U.S. Supreme *734 Court resolves an issue in a case and remands the matter to us, we are duty bound to follow the mandate of the superior court. So too at the trial level. If we decide an issue and remand the case, the trial court must carry out its duties in accordance with that mandate. See Bryan A. Garner et al., The Law of Judicial Precedent 459-60 (2016).
The second part, the part implicated by this case, is horizontal. It "expresses the practice of courts generally to refuse to reopen what has been decided" by an earlier panel of the same court in the same case. Messenger v. Anderson , 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912) (Holmes, J.). Unlike its upward counterpart, the sideways version of the law of the case is "not a limit to [a court's] power." Id. A later panel of an appellate court, like a district court, "has the power to revisit prior decisions of its own or of a coordinate court in any circumstance." Christianson v. Colt Indus. Operating Corp. , 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). That is what happened when Judge Rice took over this case, reconsidered Judge Black's opinion, came to a different conclusion, and granted summary judgment to Premier. See supra at 721-22; Garner, supra , at 474, 487-88.
Today, we sit in essentially the same position as Judge Rice. A prior panel of our court decided that Premier was not a single entity under the Sherman Act. See Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys. , 817 F.3d 934, 936 (6th Cir. 2016). One judge dissented. Id. at 945 (Griffin, J., dissenting). Now the case has returned.
As I see it, the dissent got it right. Section 1 of the Sherman Act "does not reach conduct that is wholly unilateral." Copperweld Corp. v. Indep. Tube Corp. , 467 U.S. 752, 768, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) (quotation omitted). Officers and divisions within a single entity cannot collude in a way that violates § 1. Single-entity status depends on economic realities rather than labels. Whether or not they keep their separate corporate identities, participants in a joint venture merge into a single entity if (1) their agreement creates a "complete unity of interest," id. at 771, 104 S.Ct. 2731, and (2) they receive orders from a single decisionmaking center, Am. Needle, Inc. v. Nat'l Football League , 560 U.S. 183, 194, 130 S.Ct. 2201, 176 L.Ed.2d 947 (2010).
Premier qualified as a single entity.
Complete unity of interest? Check. The hospitals shared profits and losses according to a distribution schedule that did not change based on any one hospital's performance. That means that each hospital in the joint venture benefited when another hospital succeeded even if that other hospital drew patients and profits away.
Single decisionmaking center? Check again. Premier served as the "operator" for all the joint venture's health system activities and had the power to negotiate managed care contracts, fire hospital executives, dictate their budgets, and plot the strategic course each hospital took. Med. Ctr. , 817 F.3d at 950 (Griffin, J., dissenting).
The law-of-the-case doctrine does not prohibit us from reviewing that ruling. And I would suggest we do so in this case save for one reality: It makes no difference to the outcome. Either way, Premier rightfully prevails.
No doubt, it's often said that courts at all levels should be "loathe" to overturn their earlier opinions unless they are "clearly erroneous" and cause a "manifest injustice." Christianson , 486 U.S. at 817, 108 S.Ct. 2166 (quotations omitted). But what does that mean? Surely, a legal ruling does not become more insulated from *735 reversal by a senior court every time the junior court refuses to reconsider a prior ruling. The "clear error" and "manifest injustice" phrases must refer to something else. They instead are a reminder that courts should not lightly reconsider prior rulings in the same case-lest we scramble the expectations of the parties and encourage serial efforts to revisit prior rulings. These are, in other words, self-enforced standards, not the standard a senior court uses to review a reconsidered ruling. There is no such thing as upholding an erroneous, but not clearly erroneous, legal ruling in this setting. Accordingly, if a court revisits a prior legal ruling, that does not transform the standard of review from de novo to clear error. See Garner, supra , at 447.
DISSENT
HELENE N. WHITE, Circuit Judge, dissenting in part.
I agree with the majority's conclusion that the rule of reason applies to the alleged conspiracy involving concerted action by the Hospital Defendants. However, I disagree with the majority's determination regarding the rim conspiracy involving the payers.
The majority acknowledges that there is evidence of horizontal concerted action among the payers, orchestrated by Defendants, not to provide MCEP a managed-care contract (i.e., the "rim conspiracy"), and that the per se rule would apply to that conspiracy. The majority nevertheless concludes that MCEP cannot present that evidence to a jury because (1) it constitutes a separate, unpled claim from the conspiracy claim that MCEP pled; and (2) Judge Rice did not abuse his discretion in determining that allowing MCEP to amend its complaint to include this claim would prejudice Defendants. Because the allegations in MCEP's Amended Complaint encompass this rim conspiracy; the evidence was known by Defendants early in the proceedings; this court discussed the evidence of a rim conspiracy in the first appeal; Judge Black relied on the evidence of a rim conspiracy in denying Defendants' summary judgment motions after remand; and Defendants failed to seek the purported necessary additional discovery in a timely fashion, I would reverse the grant of summary judgment and remand for trial. Accordingly, I respectfully dissent.
The majority's recitation of the procedural history of this case omits important details that bear on whether the rim conspiracy should proceed to trial. After Defendants moved for summary judgment on the basis that they were a single entity and thus incapable of conspiring, MCEP affirmatively raised the rim conspiracy, arguing in opposition to Defendants' motion that evidence of concerted action by the payers-what MCEP called "an additional facet to th[e] conspiracy" it pled (R. 139, PID 10136)-meant that the plurality requirement was met and that the alleged conspiracy would still be subject to per se treatment even if Defendants were a single entity. In reply, Defendants did not argue that the rim conspiracy constituted a separate and untimely alleged conspiracy; and they did not argue that they needed additional discovery regarding this concerted action. Rather, they argued only that there was insufficient evidence of the rim conspiracy, forfeiting any timeliness argument.
It was not until the first appeal that Defendants challenged the rim-conspiracy claim as not encompassed within MCEP's Amended Complaint, and therefore untimely. Defendants also argued that they would be prejudiced by adding this new theory to the case, and stressed at oral argument in the first appeal that they would need additional discovery to defend *736 against the allegation of horizontal concerted action by the payers. Despite Defendants' argument, the prior panel expressly considered evidence of the rim conspiracy in its majority opinion:
Plaintiff has submitted evidence that each insurer knew that the other insurers had included this [panel] limitation in their contracts, as demonstrated by the excerpt below from a Dayton industry publication:
Premier has threatened to revoke privileges for physicians participating in [plaintiff hospital] and contracts with health plans such as Anthem and UnitedHealth are known to be contingent on excluding [plaintiff hospital] from the network.
In addition to this published account, plaintiff also offered evidence from insurance company emails and defendant hospitals' Board of Directors meetings that, in addition to demonstrating knowledge among the insurers of the restriction on adding new hospitals to their networks in their managed-care contracts with defendant hospitals, the insurance companies regularly monitored each other to ensure that the other insurance companies were complying with the contract restriction on dealing with a new hospital.
Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys. , 817 F.3d 934, 941-42 (6th Cir. 2016) (hereafter MCEP I ) (second and third alterations in original) (internal citation omitted).
After remand, Judge Black issued an order requesting briefing regarding the effects of the opinion in MCEP I on Defendants' previously filed summary judgment motions. In their reply brief, Defendants summarily argued, for the first time before the district court, that the horizontal concerted action by the payers was not pled and that adding that theory to the case would prejudice them. Defendants did not request additional discovery on that issue, however.
In denying Defendants' remaining summary judgment motions, to support his conclusion that the per se rule applies to MCEP's antitrust claim, Judge Black discussed and relied on evidence that at the behest of Defendants, the payers joined in an agreement not to deal with MCEP.[1]
After Judge Black denied Defendants' remaining summary judgment motions, and despite this court's and Judge Black's opinions indicating that the rim conspiracy was part of the case and Defendants' representation to this court that they would need additional discovery to defend against that theory, Defendants still did not request additional discovery. Instead, more than seven months later, after Judge Black recused himself and only a couple of months before trial was scheduled to begin, Defendants made the same untimeliness *737 argument to Judge Rice, arguing that they would be prejudiced if the rim conspiracy was included at trial and that they would need 12-18 months of additional discovery. As the majority explains, Judge Rice accepted those arguments, finding that the rim conspiracy was not alleged in the Amended Complaint and that MCEP could not file a Second Amended Complaint because Defendants would be prejudiced by the delay.
Given this chronology, I would reverse the district court's grant of summary judgment and allow the rim conspiracy, which all agree is subject to the per se rule, to proceed to trial. This conclusion is not dependent on whether the law of the case applies, but rather on whether the issue was fairly included in the case. First, MCEP's Amended Complaint expressly alleges a group boycott subject to per se condemnation involving Defendants and the payers. The horizontal concerted action by the payers, orchestrated and monitored by Defendants, can reasonably be construed as part of this single, overarching conspiracy. This conclusion is reinforced by Defendants' failure to argue in their summary judgment briefs before the first appeal that the rim conspiracy was not encompassed within the Amended Complaint; and this court's and Judge Black's express reliance on evidence of the rim conspiracy when discussing the merits of this case.
Second, Defendants' prejudice argument is unavailing in light of their failure to (1) argue prejudice in their initial summary judgment briefing, and (2) seek the discovery they told this court they would need in October 2015, despite the opportunity to do so for months. Rather than seek the discovery they claimed to need, Defendants moved forward with trial preparations before deciding to try their untimeliness argument a third time on a different judge after it failed to persuade either this court or Judge Black.
More fundamentally, the majority's affirmance of the dismissal of the rim conspiracy deprives MCEP of any remedy based on a pleading technicality even though all agree that there is sufficient evidence that Defendants and the payers conspired to exclude MCEP from the market in a way that is per se illegal-i.e., in a way that is "so inherently anticompetitive that [the agreement] is illegal per se without inquiry into the harm it has actually caused." Copperweld Corp. v. Indep. Tube Corp. , 467 U.S. 752, 768, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) (citation omitted). Because "cases should be tried on their merits rather than the technicalities of pleadings," Tefft v. Seward , 689 F.2d 637, 639 (6th Cir. 1982), I would remand the rim conspiracy for trial.

Because Judge Black construed MCEP's claim as encompassing the rim conspiracy, his conclusion that the per se rule applied to MCEP's claim is reasonable. Further, despite the majority's conclusion "that then-Judge Sotomayor's concurrence in MLB Properties " is "[p]erhaps most destructive to" Judge Black's framing of the ancillary-restraints doctrine (Maj. Op. at 726), then-Judge Sotomayor's concurrence in MLB Properties stated at several points that the restraint must be "reasonably necessary" to the efficiency-enhancing benefits of the joint venture. See, e.g. , 542 F.3d at 338 (explaining that a per se approach may apply to joint ventures where "a particular challenged restraint is not reasonably necessary to achieve any of the efficiency-enhancing benefits of a joint venture and serves only as naked restraint against competition"). Thus, the majority's critique of Judge Black's formulation of the ancillary-restraints doctrine-requiring the restraint to be necessary to an efficiency-enhancing purpose of the joint venture-is not entirely fair given the broader context of his ruling.