857 F.2d 197
 8 U.S.P.Q.2d 1151
 DEVEX CORPORATION, Technograph, Inc., William C. McCoy,
Theodore A. Te Grotenhuis, Frederick K.
Ziesenheim, Marjorie Te Grotenhuis,
William C. McCoy, Jr., and
Katherine M.
Bassett, Appellants,
v.
GENERAL MOTORS CORPORATION.
 No. 86-5771.
 United States Court of Appeals,
Third Circuit.
 Submitted Pursuant To Third Circuit
Rule 12(6) Aug. 8, 1988.
 Decided Sept. 15, 1988.
 
 Sidney Bender, Garden City, N.Y. (Aaron Lewittes, Janine L. Bender, Syma S. Levine, Garden City, N.Y., of counsel), Alfred W. Putnam, Jr., Philadelphia, Pa., Robert K. Payson, Wilmington, Del., for appellants.
 Arthur G. Connolly, Arthur G. Connolly, Jr., Connolly, Bove, Lodge & Hutz, Wilmington, Del., William A. Schuetz, General Motors Corp., Detroit, Mich., George E. Frost, Barnes, Kisselle, Raisch, Choate, Whittemore & Hulbert, PC, Birmingham, Mich., for appellee.
 Before GIBBONS, Chief Judge, WEIS, Circuit Judge, and POLLAK,* District Judge.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 This court's judgment order of June 29, 1987 affirmed the order of the district court denying the plaintiff's requests for additional postjudgment interest and reopening of the royalties issue in this prolonged patent infringement case. The United States Supreme Court has remanded the case for reconsideration in light of Christianson v. Colt Indus. Operating Corp., --- U.S. ----, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). Based on our study of Christianson and the record before us, we will reaffirm our previous decision.
 
 
 2
 The Devex[1] litigation has proceeded for more than thirty years and has come before this court on several other occasions. The original complaint, alleging infringement on a patented process for cold-forming operations on steel products used in bumper and non-bumper parts for automobiles, was filed in 1956 in Chicago. After the district court found that the patent was invalid, the Court of Appeals for the Seventh Circuit reversed and remanded for trial. Devex Corp. v. Houdaille Indus., Inc., 382 F.2d 17 (7th Cir.1967).
 
 
 3
 The plaintiff then transferred the case to Delaware, where the district court found no infringement. We reversed in 1972. Devex Corp. v. General Motors Corp., 467 F.2d 257 (3d Cir.1972), cert. denied, 411 U.S. 973, 93 S.Ct. 2145, 36 L.Ed.2d 696 (1973). A Special Master took up the case for an accounting and assessment of damages. He recommended an award for the infringement attributable to bumper manufacture but denied recovery for non-bumper processing. The finding on the non-bumper aspect was approved by the district court, Devex Corp. v. General Motors Corp., 494 F.Supp. 1369 (D.Del.1980), and damages of $8.8 million were awarded for the bumper infringement as well as $11 million in prejudgment interest plus postjudgment interest and costs.
 
 
 4
 In 1981, we affirmed the district court's decision. Devex Corp. v. General Motors Corp., 667 F.2d 347 (3d Cir.1981). In a petition for certiorari filed in 1982, the plaintiff asserted error in this court's denial of damages for infringement in processing non-bumper parts. The Supreme Court denied this petition, General Motors Corp. v. Devex Corp., 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982), although it granted certiorari on the issue of prejudgment interest.
 
 
 5
 In General Motors Corp. v. Devex Corp., 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983), the Court remanded the case to the district court for rulings on postjudgment interest and interest on costs. After the district court had taken appropriate action, we affirmed its rulings in 1984. Devex Corp. v. General Motors Corp., 577 F.Supp. 429, aff'd, 749 F.2d 1020 (3d Cir.1984) (Gibbons, J., dissenting).
 
 
 6
 The case came before the Supreme Court again in 1985, when plaintiff argued that our decision on the issue of postjudgment interest was not in harmony with the holdings of other Courts of Appeals, particularly those of the Federal Circuit. Plaintiff also asked the Court once again to review the non-bumper part infringement. The Court denied both requests. Devex Corp. v. General Motors Corp., 474 U.S. 890, 106 S.Ct. 212, 88 L.Ed.2d 181 (1985); Technograph, Inc. v. General Motors Corp., 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985).
 
 
 7
 Most recently, in 1986, plaintiff again appeared in the district court in Delaware where, in addition to the postjudgment interest issue, an argument was made that a conflict exists between our 1981 denial of royalties and later decisions in the Federal Circuit. See Railroad Dynamics, Inc. v. A. Stucki Co., 727 F.2d 1506 (Fed.Cir.), cert. denied, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984).
 
 
 8
 Plaintiff filed its 1986 appeal in the United States Court of Appeals for the Federal Circuit. That court transferred the appeal to us pursuant to 28 U.S.C. Sec. 1631 and "in the interests of comity and judicial economy." Plaintiff then moved to transfer the case back to the Federal Circuit on the ground that it had exclusive jurisdiction over the appeal under 28 U.S.C. Sec. 1295(a)(1). The Federal Circuit denied plaintiff's motion for rehearing and its request for in banc consideration of the transfer order. Once again, the plaintiff asked for certiorari but the Supreme Court denied the petition. Technograph Liquidating Trust v. General Motors Corp., 480 U.S. 918, 107 S.Ct. 1372, 94 L.Ed.2d 688 (1986); Technograph Liquidating Trust v. General Motors Corp., 480 U.S. 918, 107 S.Ct. 1374, 94 L.Ed.2d 689 (1986).
 
 
 9
 The procedural chronology of the case before us reveals that all phases disputing actual patent issues had been concluded in the district court, this court, and the Supreme Court by 1982--before the Federal Circuit came into existence. The Devex patent itself expired in 1969, and only damages were involved in most of the litigation. The remaining issues dealt essentially with postjudgment interest and interest on costs, and did not raise questions of the validity of the patent or of its infringement.
 
 
 10
 In Christianson the Court emphasized the doctrine of the law of the case, directing that when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the litigation. Id. 108 S.Ct. at 2177. Although a court has the power to revisit prior decisions, "as a rule courts should be loathe to do so in the absence of extraordinary circumstances." Id. at 2178.
 
 
 11
 Unlike the situation in Christianson, this court did not bounce this appeal back to the Court of Appeals for the Federal Circuit, but instead, entertained and decided the case. To transfer the case to the Federal Circuit at this stage of almost interminable litigation would be to engage in what the Supreme Court so aptly described as "a perpetual game of jurisdictional ping pong." Christianson, 108 S.Ct. at 2179.
 
 
 12
 An additional factor distinguishes this case from Christianson. Here the Supreme Court denied certiorari after the Federal Circuit declined jurisdiction and transferred the case to this court. The lengthy history of this litigation and the substantial reasons supporting the Federal Circuit's order, at best, makes this what the Supreme Court characterized as a "marginal jurisdictional dispute." Id. at 2179. In that scenario, the Christianson Court admonished "[u]nder law-of-the-case principles, if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end." Id. "The courts of appeals should achieve [quick settlement of questions of transfer] by adhering strictly to principles of law of the case." Id.
 
 
 13
 This court has followed the law of the case, and on reconsideration, therefore, has concluded that we should not disturb our earlier entry of judgment in favor of the defendant.
 
 
 14
 The order of the district court will be affirmed.
 
 
 15
 LOUIS H. POLLAK, District Judge, concurring.
 
 
 16
 I concur in the judgment and opinion of the court. I write separately to underscore the particular elements of the matter that seem to me of controlling importance.
 
 
 17
 Judge Weis' opinion carefully identifies the major elements of this case's quasi-Dickensian litigation history. That history establishes two propositions which are in my mind dispositive of the issue presented by the Supreme Court's remand of this case for reconsideration in the light of its decision in Christianson v. Colt Industries Operating Corp., --- U.S. ----, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).
 
 
 18
 The first proposition is that the law of the case applicable to the issue before us--namely, that this court, and not the Federal Circuit, is the proper court of appeals to review the 1986 judgment of the District Court for the District of Delaware--was determined by the Federal Circuit in 1986. That determination was embodied in the Federal Circuit's orders (a) transferring to this court the appeal filed by Technograph, and (b) denying Technograph's motion for rehearing and en banc consideration of the transfer order--a motion predicated on Technograph's contention that the Federal Circuit had exclusive appellate jurisdiction.
 
 
 19
 The second proposition is that the ruling of the Federal Circuit that this court is the proper appellate tribunal, while perhaps not indisputably correct, was (whether viewed as of then or today) certainly not clearly wrong. Whatever may have been the character of this litigation at its inception, by 1986 the patent ingredients had essentially disappeared. "... [W]hether a claim arises under the patent laws may depend on the time when the question is asked." Christianson, 108 S.Ct. at 2179 (Stevens, J., concurring).
 
 
 20
 In their pioneering casebook in 1936, Thurman Arnold and Fleming James observed that "[t]he doctrine of the 'law of the case' arises from a head-on collision between the rules of stare decisis and res judicata." Arnold and James, Cases on Trials, Judgments and Appeals (1936) 215 n. 42. Half a century later, perhaps we may modify that professorial pronouncement by characterizing law of the case as a pastiche of stare decisis and res judicata. Suffice it to say that the original rigor of law of the case has long since been ameliorated; however, that original rigor died hard. Compare John v. Pierce, 176 Wis. 220, 186 N.W. 600 (1922), with McGovern v. Kraus, 200 Wis. 64, 227 N.W. 300 (1929). Thus, in Johnson v. Cadillac Motor Car Co., 261 F. 878 (2nd Cir.1919), it was only by a divided vote that the Second Circuit, in 1919, found itself free, on a second appeal, to conclude that MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916), decided by the New York Court of Appeals subsequent to the first appeal, was a juridical event of sufficient consequence to warrant a departure from the legal principles found to be dispositive on the first appeal. Viewing the problem as an aspect of stare decisis, the Second Circuit recognized "the general rule that on a second appeal matters disposed of on the first appeal ordinarily will not again be considered," but concluded that "the rule is not an inexorable one, and should not be adhered to in a case in which the court has committed an error which results in injustice, and at the same time lays down a principle of law for future guidance which is unsound and contrary to the interests of society." 261 F. at 886. In its extensive canvass of the case law, the Second Circuit quoted excerpts from the first paragraph of an opinion written in 1891 by Chief Justice Bleckley for the Supreme Court of Georgia, Ellison v. Georgia Railroad & Banking Co., 87 Ga. 691, 13 S.E. 809, 810 (1891). The first paragraph of the opinion in Ellison deserves quotation in full:
 
 
 21
 Some courts live by correcting the errors of others and adhering to their own. On these terms courts of final review hold their existence, or those of them which are strictly and exclusively courts of review, without any original jurisdiction, and with no direct function but to find fault, or see that none can be found. With these exalted tribunals, who live only to judge the judges, the rule of stare decisis is not only a canon of the public good, but a law of self-preservation. At the peril of their lives they must discover error abroad, and be discreetly blind to its commission at home. Were they as ready to correct themselves as others, they could no longer speak as absolute oracles of legal truth; the reason for their existence would disappear, and their distruction would speedily supervene. Nevertheless, without serious detriment to the public or peril to themselves, they can and do admit now and then, with cautious reserve, that they have made a mistake. Their rigid dogma of infallibility allows of this much relaxation in favor of truth unwittingly forsaken. Indeed, reversion to truth, in some rare instances, is highly necessary to their permanent well-being. Though it is a temporary degradation from the type of judicial perfection, it has to be endured, to keep the type itself respectable. Minor errors, even if quite obvious, or important errors, if their existence be fairly doubtful, may be adhered to, and repeated indefinitely; but the only treatment for a great and glaring error affecting the current administration of justice in all courts of original jurisdiction is to correct it. When an error of this magnitude, and which moves in so wide an orbit, competes with truth in the struggle for existence, the maxim for a supreme court,--supreme in the majesty of duty as well as in the majesty of power,--is not stare decisis, but fiat justitia ruat coelum.
 
 
 22
 The Court's opinion in Christianson makes plain that the legacy of Chief Justice Bleckley, tempered by the Second Circuit's more modest rhetoric in Johnson v. Cadillac Motor Co., is alive and well in the federal courts today. According to Christianson, "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance ..." But "as a rule, courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.' " 108 S.Ct. at 2178. Since such "extraordinary circumstances" are not presented here, I agree that there is no occasion to depart from our prior acquiescence in the Federal Circuit's order transferring this matter to this court.
 
 
 
 *
 The Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 In its March 1987 brief on the merits, Technograph states:
 "The only appellant in this case is Technograph Liquidating Trust, successor to Technograph, Inc., a North Carolina Corporation. The other named plaintiffs below--Devex Corporation, William C. McCoy, Jr., individually and as an Executor of the Estate of William C. McCoy, deceased, Theodore A. TeGrotenhuis, Frederick B. Ziesenheim, Marjorie TeGrotenhuis, and Katherin M. Bassett--no longer have any interest in this litigation."
 Brief for Appellant at 1-2 n. 2, Devex v. General Motors Corp., 822 F.2d 52 (3d Cir.1987).