**In re CITY OF PHILADELPHIA LITIGATION.**

**Ramona AFRICA**

v.

**CITY OF PHILADELPHIA, et al.**

**Louise JAMES, Administratrix of the Estate of Frank James**

v.

**CITY OF PHILADELPHIA, et al.**

**Alfonso LEAPHART, Administrator of the Estate of Vincent Leaphart**

v.

**CITY OF PHILADELPHIA, et al.**

No. 85–2745.

United States District Court, E.D. Pennsylvania.

Dec. 13, 1995.

---

*OPINION*

LOUIS H. POLLAK, District Judge.

Plaintiffs Ramona Africa, Louise James, and Alfonso Leaphart have moved to revise a portion of this court's order of January 5, 1994. In that order, summary judgment was granted to the City of Philadelphia on the decision by city officials to drop an explosive device on the MOVE residence at 6221 Osage Avenue, while summary judgment was denied on the decision to let the ensuing fire burn. In their present motions, plaintiffs seek to reinstate their claims arising from the dropping of the bomb. The motions are based on the plaintiffs' understanding of the Third Circuit's opinion in this case—*In re City of Philadelphia Litigation*, 49 F.3d 945 (3d Cir.1995)—which suggested that these claims be reinstated. The City of Philadelphia defends against these motions on the basis of the doctrine of the "law of the case." For the reasons that follow, the motions will be granted.

## I. Factual and Procedural Background

On May 13, 1985, the City of Philadelphia attempted to arrest certain members of the MOVE organization by dropping an explosive device on the roof of the MOVE residence at 6221 Osage Avenue. The bomb was used with the apparent intentions of destroying a rooftop bunker and creating a hole into which tear gas canisters could be dropped. Tragically, however, the bomb caused a fire, killing eleven of the thirteen occupants and destroying many of the surrounding homes. These lawsuits followed. The plaintiffs—Ramona Africa, one of the survivors of the blaze; Louise James, suing both on behalf of her son Frank James, also known as Frank Africa, who perished in the conflagration at 6221 Osage, and in her capacity as owner of 6221 Osage; and Alfonso Leaphart, who sues on behalf of another person who died in the blaze, Vincent Leaphart, also known as John Africa—assert that various state and federal rights were violated by defendant City of Philadelphia and several defendant city officials. The plaintiffs' primary federal claim arising under 42 U.S.C. § 1983 is that the bombing of the MOVE residence and the subsequent fire constituted an unreasonable seizure—an excessive use of force in effecting an arrest—in violation of the Fourth Amendment.

In a bench opinion delivered January 3, 1994, the substance of which was entered as an order two days later, I applied the Fourth

Amendment standard announced in *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), to analyze the defendants' summary judgment motions. *In re City of Philadelphia Litigation,* 849 F.Supp. 331 (E.D.Pa.1994). In agreement with major aspects of the meticulous analysis contained in the October 6, 1993 Report and Recommendation of Magistrate Judge William F. Hall, I granted summary judgment to all defendants on the section 1983 claims challenging the decision to drop the bomb on the MOVE compound. However, I denied summary judgment on the claims against former Police Commissioner Gregore Sambor, former Fire Commissioner William Richmond, and former Managing Director Leo Brooks, as well as those claims against the City, arising from the decision by city officials to let the fire caused by the bomb to burn. Summary judgment was further granted to defendant Mayor W. Wilson Goode and defendant Police Lieutenant Frank Powell on all claims.

■ Following the issuance of this opinion and order, final judgment was entered in favor of defendant Goode, making the dismissal of the claims against him immediately appealable. Under *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the denial of qualified immunity is immediately appealable under the collateral order doctrine. Thus, the denial of immunity to defendants Sambor, Richmond, and Brooks was also appealable. Further, I certified for appeal the denial of summary judgment on the claims against the City based on letting the fire burn.[1] These issues were then appealed to the Third Circuit.

On appeal, the Third Circuit divided on all the issues before it. *In re City of Philadelphia Litigation,* 49 F.3d 945 (3d Cir.), *cert.*

denied, —— U.S. ——, 116 S.Ct. 176, 133 L.Ed.2d 116 (1995). Two judges—Judges Greenberg and Scirica—concluded that *Tennessee v. Garner* was not the correct standard for analyzing the use of excessive force in effecting an arrest, but rather the applicable standard could be found in *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Applying this standard, these two judges reversed the denial of qualified immunity to all the individual defendants, thus dismissing the federal claims against them. A second pairing of judges— Judges Scirica and Lewis—affirmed the denial of summary judgment against the City on the section 1983 claims. As a result of the Third Circuit's ruling, only the City faces the possibility of liability under section 1983.

Although the issue was not one the appellate court was required to address, each of the three judges took occasion to discuss, in some measure, whether the decision to drop the bomb established a claim cognizable under the Fourth Amendment. Judge Scirica stated that summary judgment was inappropriately granted to the City on this claim: "I do not believe that as a matter of law no reasonable jury could conclude that the decision to employ the incendiary device was an excessive use of force." *Id.* at 974. Attached to this statement was the following footnote:

> The district court analyzed the decision to drop the incendiary device separately from the decision to let the bunker burn. Unlike the district court, I see little distinction between dropping the incendiary device and letting the fire burn. Both actions were undertaken to effect the same result—to enable the police to insert tear gas into the house in order to force the

1. The certification order stated in part:

   A. There being no just reason for delay, the January 5 dismissals of all claims against defendants Powell and Goode shall pursuant to Rule 54(b) be declared final judgments, and it is HEREBY EXPRESSLY DIRECTED that final judgments shall be ENTERED in favor of defendants Powell and Goode on all claims.
   B. It is DECLARED to be the opinion of this court that, within the intendment of 28 U.S.C. § 1292(b), (1) the issue, determined adversely to the City of Philadelphia in Paragraph 9 of the January 5 order, of the suability of the City

   of Philadelphia, pursuant to 42 U.S.C. § 1983, on claims arising from the decision to let the MOVE fire burn, is one which involves a controlling question of law as to which there is substantial ground for difference of opinion, and (2) that an immediate appeal from that aspect of the January 5 order, taken in conjunction with anticipated appeals on related questions of the qualified immunity of certain individual defendants, may materially advance the ultimate termination of the litigation.
   Memorandum/Order of February 1, 1994, available at 1994 WL 46654 (E.D.Pa. Feb. 1, 1994).

occupants out. The risk of fire existed from the moment the device was dropped, and very little time elapsed between dropping the device and deciding whether to respond to the fire.

*Id.* at 974 n. 2. Judge Lewis agreed that the decision to drop the bomb was cognizable under the Fourth Amendment:

> I begin by setting forth my agreement with Judge Scirica that no distinction should be drawn between the decision to drop the incendiary device and the decision to let the fire burn. As Judge Scirica observes, both actions were undertaken to effect the same result, namely, to enable the police to insert tear gas into the house in order to force the MOVE occupants out.

*Id.* at 976. Judge Lewis further concluded that summary judgment should not have been granted to the City either for dropping the bomb or for letting the fire burn. Judge Greenberg disagreed with his colleagues on these points and concluded that summary judgment should be granted on both of these actions: "[T]he plaintiffs have no federal case against any defendant by reason of any injury Ramona Africa may have suffered or by reason of the deaths of John and Frank Africa *because there was no seizure.*" 49 F.3d at 964 (emphasis added). Moreover, even assuming that the decision to drop the bomb and to let the fire burn amounted to a seizure, as that term is understood under the relevant Fourth Amendment precedents, Judge Greenberg concluded that, as a matter of law, these decisions were not unreasonable. Judge Greenberg recognized that his views on these points were not joined by either of the other judges on the panel. He therefore described as follows the implications of the views of Judges Scirica and Lewis:

> We note that the district court granted the city partial summary judgment with respect to the dropping of the bomb and that no appeal from that order is pending. Nevertheless, the rationale adopted by Judge Scirica and Judge Lewis leads to the conclusion that the city was not entitled to summary judgment on that point. Thus, while we do not disturb that unappealed summary judgment, we observe

that the plaintiffs might want to seek relief from it under Fed.R.Civ.P. 54(b) or Fed. R.Civ.P. 60(b)(6).

*Id.* at 973.

Following Judge Greenberg's advice, the plaintiffs filed the present motions to revise the January 5 order and vacate the summary judgment granted in favor of the City on the dropping of the bomb.

## II. The Applicability of the "Law of the Case" Doctrine

The City asserts that reinstatement of the dropping-the-bomb claim would violate the "law of the case" doctrine. As the Third Circuit has stated, "The doctrine of the law of the case dictates that 'when a court decides upon a rule of law, that rule should continue to govern the same issue in subsequent stages in the litigation.'" *In re Resyn Corp.*, 945 F.2d 1279, 1281 (3d Cir.1991) (quoting *Devex Corp. v. General Motors Corp.*, 857 F.2d 197, 199 (3d Cir.1988)). *See also* Moore's Federal Practice ¶ 0.404[1] (1993) ("Under the doctrine of the law of the case, a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation."). The City's argument involves that aspect of the doctrine which addresses the impact of an appellate decision on a subsequent remand. Broadly stated, the doctrine establishes the commonplace principle that the decision of an appellate court must be followed on remand by the trial court. *See id.* ("When a case is appealed and remanded, the decision of the appellate court establishes the law of the case, which *must* be followed by the trial court on remand.") (emphasis in original).

The City's argument that the law of the case doctrine bars the reinstatement of the federal claims against the City for dropping the bomb proceeds as follows. The City asserts that the summary judgment entered by this court on January 5 in favor of former Mayor Goode on all the federal claims against him included both the claims against Goode in his personal capacity and those against him in his official capacity. It should be noted that, according to the plaintiffs, it

was Goode who made the ultimate decision to employ the explosive device on the MOVE residence, and it is his decision which, under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), implicates the City in the use of the device. Summary judgment on the personal-capacity claims was premised on the applicability of qualified immunity, a determination that indicates that a reasonable person in the defendant's position *could have believed* that his actions were within the bounds of the Constitution. In contrast, summary judgment in favor of Goode on the official-capacity claims would indicate that no constitutional violation occurred. The City argues that, in affirming the grant of summary judgment in favor of defendant Goode, the Third Circuit necessarily affirmed the grant of summary judgment in favor of Goode on the official-capacity claims, expressing the conclusion that the dropping of the bomb did not amount to a constitutional violation. Reinstatement of the constitutional claims based on the dropping of the bomb would, under the City's view, contradict the Third Circuit's decision.

The City's argument suffers several flaws. First, the January 3 bench opinion and January 5 order granting summary judgment in favor of former Mayor Goode address only the claims against him in his personal capacity. This grant of summary judgment was based exclusively on the conclusion that Goode was entitled to qualified immunity. *See* 849 F.Supp. at 338 (stating that "I am persuaded that, as close as the issue is, Judge Hall's analysis of that aspect of the case is correct and that qualified immunity is available to the defendants, as Judge Hall concluded, with respect to the decision to drop the explosive device."). Neither the January 3 bench opinion nor the January 5 order mentions any official-capacity claims against defendant Goode. The rulings merely grant Goode qualified immunity on the personal capacity claims, a decision that does not affect the City's liability. As Judge Scirica wrote on appeal, "[T]he city does not have qualified immunity from liability even if it can show that the officials themselves are entitled to immunity from personal liability under § 1983." 49 F.3d at 975 (citing *Owen*

*v. City of Independence,* 445 U.S. 622, 650, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673 (1980)).

Second, the opinions of the three appellate judges reflect their understanding that summary judgment in favor of defendant Goode was on the basis of qualified immunity alone. Thus, Judge Greenberg stated, "The plaintiffs appeal from the district court's grant of summary judgment on qualified immunity grounds in favor of certain of the defendants with respect to claims arising from the dropping of the explosive device." 49 F.3d at 948. Moreover, as already noted, Judge Greenberg went on to explicate the implications of his colleagues' expressed view—a view with which he disagreed—that the grant of summary judgment in the City's favor on the issue of dropping the bomb was erroneous: "[T]he rationale adopted by Judge Scirica and Judge Lewis leads to the conclusion that the city was not entitled to summary judgment on that point. ... [W]e observe that the plaintiffs might want to seek relief from it in the district court." 49 F.3d at 973.

Because the Third Circuit did not rule on the liability of the City for the decision to drop the explosive device, reinstatement of the claims based on this decision is not barred by the doctrine of the law of the case. On the contrary, reinstatement of these claims is exactly what the Third Circuit recommended. Because the issue of the City's liability for dropping the bomb was not presented to the Third Circuit, this recommendation is not binding on this court. In the next section of this opinion, I consider whether the recommendation to reinstate these claims should be adopted.

## III. Whether the Federal Claims Against the City for the Dropping of the Explosive Devise Should Be Reinstated

█ The plaintiffs assert that the decision to drop the bomb constituted an unreasonable seizure of the occupants of the MOVE residence in violation of the Fourth Amendment. Specifically, plaintiffs assert that the use of an explosive device constituted an excessive use of force. As the Third Circuit ruled, the standard for analyzing such claims

derives from the Supreme Court's opinion in *Graham v. Connor*, in which the Court held:

> [A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard. . . . Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake. . . . [I]ts proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

490 U.S. 386, 395, 396, 109 S.Ct. 1865, 1871, 1872, 104 L.Ed.2d 443 (1989) (citations omitted).

Under the standard articulated in *Graham,* the City violated the Fourth Amendment if, in the circumstances encountered by the City of Philadelphia officials, reasonable officials would have concluded that the dropping of an explosive device on 6221 Osage Avenue amounted to an excessive use of force. As Judge Scirica stated, this determination is a question of fact. 49 F.3d at 974 ("Both the reasonableness of the decision to end the confrontation before nightfall rather than allow the stand-off to continue and the reasonableness of the choice of means to end the stand-off—eliminating the bunker with an incendiary device—are questions of fact."). The reasonableness of the decision to drop the bomb requires weighing the city's interest in arresting the MOVE members and thus eliminating the threat city officials believed that the MOVE members posed to public safety, against the severity of the means it employed to further this interest.

The excessive force claim against the City based on the dropping of the explosive device on 6221 Osage Avenue should proceed because disputes of material fact exist on both sides of this balance. The City has submitted evidence that would support the conclusion that the occupants of 6221 Osage posed a serious threat to the police and to neighbors. According to the probable cause affidavit submitted to support the arrest and search warrants issued on May 11, 1985, one MOVE member had allegedly announced: "We will kill any motherfucking cop that comes to the front, back or our goddamned roof." The Affidavit further states that this MOVE member announced on a loudspeaker that MOVE had "wired the entire block with explosives and that if any neighborhood resident speaks with the press, or if the police take action against MOVE, MOVE will blow up the entire block." When the police attempted to execute the warrants at 6221 Osage, they were met by gunfire, precipitating an exchange of bullets that lasted approximately an hour and a half.

The plaintiffs, in contrast, have submitted evidence that would support the conclusion that, at the moment the bomb was dropped, the occupants of 6221 Osage posed very little threat to the police and to neighbors. The City had evacuated the neighborhood on May 12, 1985, the day before the fatal confrontation, thus diminishing the threat posed to the public by the MOVE members. At the time the bomb the bomb was dropped, some hours had passed since the end of the gun fight, a fact which, the plaintiffs argue, suggests a diminished immediacy of the threat posed by the MOVE members. Moreover, at the time the City employed the explosive device, police had surrounded the residence, greatly outnumbering the MOVE residents and focusing on them considerable fire power unmatched by that available to MOVE members. Escape, seemingly, was an unrealistic possibility. Furthermore, according to the plaintiffs, there was little necessity to end the stand-off before nightfall because, as city officials acknowledge, they could have provided artificial light around the 6221 Osage residence to ensure that attempts to escape would be easily detected.

From these facts, a jury could reasonably reach widely divergent views on the danger posed by the occupants of the MOVE resi-

dence. Similarly, the evidence establishes a dispute as to the severity of the means employed by the City in addressing this danger, for it is unclear just what city officials reasonably believed the power of the explosive device to be. It is also unclear whether there were gasoline tanks on the roof of the MOVE residence and whether city officials were aware of the attendant risks. In addition, less severe alternatives—such as simply waiting out the conflict—may have been available to the City. While a jury might well conclude that the decision of the City to drop the explosive device on the MOVE residence was, under the circumstances, consistent with the reasonableness standard of the Fourth Amendment, this is not the only permissible conclusion supported by the evidence. As a result, the plaintiffs' section 1983 claims against the City based on the dropping of the bomb should be allowed to proceed.

An appropriate order accompanies this memorandum in which the claims against the City for employing the explosive device are reinstated.

### ORDER

Upon consideration of plaintiffs' motions to revise this court's order of January 5, 1994 and to reinstate their claims under 42 U.S.C. § 1983 against the City of Philadelphia based on the decision to drop an explosive device on the MOVE residence at 6221 Osage Avenue, and upon consideration of the response of the defendant City of Philadelphia, and for the reasons provided in the accompanying memorandum, it is hereby ORDERED that the motions are GRANTED.