Larry **MITCHELL, et al., Plaintiffs,**

v.

**Valerie LEMMIE, et al., Defendants.**

No. C–3–02–76.

United States District Court,
S.D. Ohio,
Western Division.

May 6, 2002.

John Josephy Scaccia, Dayton, OH, for plaintiffs.

Neil Frank Freund, Freund Freeze & Arnold–3, Leonard J. Bazelak, Freund, Freeze & Arnold, Dayton, OH, for defendants.

DECISION AND ENTRY SUSTAINING PLAINTIFFS' MOTION FOR RE-MAND (DOC. # 2); PLAINTIFFS ORDERED TO SUBMIT EVI-DENCE, WITHIN FOURTEEN (14) DAYS FROM DATE, AS TO AMOUNT OF ATTORNEY FEES AND COSTS INCURRED IN FIL-ING THE MOTION FOR REMAND; CAPTIONED CAUSE REMANDED TO THE MONTGOMERY COUNTY COURT OF COMMON PLEAS; JUDGMENT TO BE ISSUED AC-CORDINGLY; TERMINATION ENTRY

RICE, Chief Judge.

The instant litigation arises out of the failure of Plaintiff Larry Mitchell ("Mitch-ell") to receive a promotion to the position of Division Manager for Waste Collection with the City of Dayton.[1] According to his Second Amended Complaint (Doc. # 1), in 1981, Plaintiff began working for the De-partment of Public Works, Division of Waste Collection for the City of Dayton, as an entry-level waste collector. He was an exemplary employee, and on July 11, 1994, he was offered the position of Waste Col-lection Supervisor. He performed his duties in a highly professional and profi-cient manner. By September of 1998, Mitchell's supervisor admitted that she could not identify any areas in need of improvement.

In the Spring of 1998, the Division Man-ager of Waste Collection was promoted to Deputy Director of Public Works. The City of Dayton began to consider candi-dates to fill the vacated position, and by September of that year, the field of candi-dates had been narrowed to two individu-als: Mitchell, who is a Caucasian Ameri-can, and Mr. James, an African American. It was decided that these two individuals would compete for the job. On January 1, 1999, Plaintiff began serving as Acting Di-vision Manager of Waste Collection, a posi-tion which he was to hold for three months. Plaintiff's performance as Acting Division Manager was exceptional, and both the Director and Deputy Director of Public Works planned to appoint him as Division Manager of Waste Collection.

According to Plaintiff, Defendant Valerie Lemmie ("Lemmie"), the Dayton City Manager and an African American, and other persons in operational control of the Dayton City Government decided that an African American should continue to hold the position of Division Manager of Waste

---

**1.** Plaintiff's spouse, Mary Mitchell, has brought a claim for loss of consortium.

Hereinafter, the term "Plaintiff" will be used to refer to Larry Mitchell only.

Collection or, if no passable African American could be found to accept the position, a female should be chosen. Plaintiff alleges that during the last five years, a group of African American employees of the City of Dayton, led by Lemmie, has gained operational control of the Dayton City Government, and has instituted a system based on nepotism, cronyism, and corruption. When Lemmie learned that Mitchell had been selected to fill the Division Manager position, she overruled the decision and ordered that a "National" search be conducted for an appropriate candidate to fill the position. The Director and Deputy Director of Public Works asked Mitchell to continue as Acting Division Manager, assuring him that he was still in the running for the position and was a viable candidate. Plaintiff agreed to continue as Acting Division Manager.

As part of the "National" search, Plaintiff again applied for the position of Division Manager of Waste Collection. A five-person panel was selected to interview and to evaluate candidates. All candidates were informed that the top three individuals would be selected for a meeting with Lemmie and that one of those three would be the next Division Manager. Plaintiff was among the top three candidates. Of those three individuals, Plaintiff was evaluated to be the second choice. By the end of September of 1999, all three candidates had met with Lemmie. By December of 1999, the two other candidates had withdrawn themselves from consideration for the position. Although Mitchell was the only remaining candidate, Lemmie ordered that he not be offered the job, and that a second national search be conducted. By late December, 1999, or early January, 2000, Mitchell was aware that he would never be appointed to the Division Manager of Waste Collection position. Consequently, he asked to be relieved of the responsibilities of Acting Division Manager. At the end of January of 2000, Plaintiff returned to the position of Waste Collection Supervisor. On October 1, 2000, Celeste Peele, an African American female and a sorority sister of Lemmie, was appointed Division Manager of Waste Collection.

On December 3, 2001, Plaintiff brought suit in the Montgomery County Court of Common Pleas against Lemmie; the City of Dayton; Mayor Michael Turner; and Dayton City Commissioners Dean Lovelace, Idotha Bootsie Neal, and Mary Weisman, setting forth fourteen claims for relief, to wit: (1) a state law claim for race discrimination, in violation of Ohio Rev. Code § 4112.02; (2) a state law claim for sex discrimination, in violation of Ohio Rev.Code § 4112.02; (3) a state common law claim for discrimination; (4) a state law claim for breach of contract; (5) a state law claim for equitable estoppel; (6) a state law claim for promissory estoppel; (7) a state law claim for negligent misrepresentation; (8) a state law claim for breach of the duty of good faith and fair dealing/ bad faith contract; (9) a state law claim for quantum meruit; (10) a state law claim for retaliation and discharge, in violation of public policy; (11) a state law claim for negligent and intentional infliction of emotional distress; (12) a state law claim for negligent supervision and administration; (13) a state law claim, brought by Mary Mitchell, for loss of consortium; and (14) a claim for punitive damages. Plaintiff filed an Amended Complaint on February 1, 2002, and a Second Amended Complaint on February 4, 2002, both of which set forth the same causes of action as the original Complaint and are virtually identical to that pleading. On February 19, 2002, Defendants removed the action to this Court, alleging that this Court has federal question subject matter jurisdiction.

Pending before the Court is Plaintiff's Motion for Expedited Remand (Doc. # 2). For the reasons assigned, Plaintiff's Motion is SUSTAINED.

 The party seeking to litigate in federal court bears the burden of establishing the existence of federal subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). This is no less true where, as here, it is the defendants, rather than the plaintiff, who seeks the federal forum. *E.g., Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453–54 (6th Cir.1996). When the party asserting federal jurisdiction finds its allegations challenged, it must submit evidence substantiating its claims. *Amen v. City of Dearborn*, 532 F.2d 554, 560 (6th Cir.1976). The removing defendants' burden is to prove, by a preponderance of the evidence, that the jurisdictional facts they allege are true. *Gafford v. General Electric Co.*, 997 F.2d 150, 158 (6th Cir.1993). The district court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990) (citations omitted). The court may consider such evidence without turning the motion into one for summary judgment. *Id.*

In his Motion for Remand, Plaintiff asserts that the present action must be remanded to the Montgomery County Court of Common Pleas, because (1) the removal was untimely, and (2) he has not asserted any federal claim in his Second Amended Complaint. Plaintiff further argues, in the alternative, that if a federal question does exist, the action should be remanded, pursuant to 28 U.S.C. § 1367(c), because state law predominates over any federal question.

### I. *Timeliness of the Removal*

 28 U.S.C. § 1446 sets forth the procedure for removal. With regard to time limitations, it states, in pertinent part:

> (b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b). The Sixth Circuit has held that the statute conferring removal jurisdiction is to be construed strictly, because removal jurisdiction encroaches on a state court's jurisdiction. *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir.1999); *Bearup v. Milacron*, 2002 WL 482548, *3 (E.D.Mich. Feb. 28, 2002); *Gafford v. General Electric Co.*, 997 F.2d 150, 164 (6th Cir.1993). "The strict time requirement for removal in civil cases is not jurisdictional; rather, 'it is a strictly applied rule of procedure and untimeliness is a ground for remand so long as the timeliness defect has not been

waived.'" *Seaton v. Jabe,* 992 F.2d 79, 81 (6th Cir.), *cert. denied,* 510 U.S. 871, 114 S.Ct. 200, 126 L.Ed.2d 157 (1993) (citation omitted).

■ In the present case, Defendants removed the action to this Court on February 19, 2002, seventy-five (75) days after Plaintiff filed his original Complaint. Defendants acknowledge that they did not remove the lawsuit within thirty days of the filing of the initial Complaint. They argue, however, that the Second Amended Complaint made material changes to Plaintiff's claims, thereby indicating an intent by Plaintiff to assert federal claims. The Court disagrees.

Plaintiff's initial pleading referenced federal law in four locations. *First,* under Count Eight, Plaintiff asserted that Defendants had a duty towards him to act in good faith in regard to his associations, rights, benefits, and expectations (Compl.¶ 144). He further alleges that "[t]hese constitute liberty and property interests recognized under the First and Fourteenth [A]mendments [to] the United States Constitution as well as corresponding provisions in the Constitution of the State of Ohio." (*Id.*) *Second,* in setting forth his claim of unlawful retaliation and/or discharge in violation of public policy (Count Ten), Plaintiff alleges that a clear public policy against retaliation and discrimination exists "that is manifested in the Constitution of the United States and/or Constitution of the State of Ohio, federal and/or state statute and/or administrative regulation, and/or in the common law[,] including but not limited to 42 U.S.C. Sections 1983, 2000(e) et seq. and O.R.C. Section 4112...." (*Id.* ¶ 150). *Third,* in the caption for Count Fourteen (erroneously labeled "Thirtieth Cause of Action"), Plaintiff cites to 42 U.S.C. § 1981a(b)(1). *Fourth,* Plaintiff's caption for his equitable estoppel claims includes a footnote, which contains a citation to

*Minnesota Mining and Mfg. Co. v. Blume,* 533 F.Supp. 493 (S.D.Ohio 1978), *aff'd,* 684 F.2d 1166 (6th Cir.1982), *cert. denied,* 460 U.S. 1047, 103 S.Ct. 1449, 75 L.Ed.2d 803 (1983) and 461 U.S. 939, 103 S.Ct. 2110, 77 L.Ed.2d 314 (1983).

Plaintiff's Second Amended Complaint contains only two relevant amendments to the initial pleading. Paragraph 150 was modified to eliminate the specific references to § 1983 and to Title VII, and the caption for Count Fourteen was amended to eliminate the reference to § 1981. Plaintiff did not add claims or amend his previously asserted claims, expressly basing them upon a federal statute. In fact, neither the First nor Second Amended Complaint added any references to the United States Constitution, to a federal statute, or to any other federal law. Accordingly, the Court concludes that, to the extent that Plaintiff has asserted any federal claim (and the Court concludes, *infra,* he did not), such claim(s) was raised initially in his original Complaint. Thus, the thirty-day time requirement for removing this action to federal court commenced at the time Defendants were served with Plaintiff's initial pleading. Because Defendants removed this action more than thirty days after being served with Plaintiff's original Complaint, their removal was untimely. Plaintiff's Motion for Remand is SUSTAINED.

## II. *Federal Question Jurisdiction*

■ Even assuming, *arguendo,* that Defendants' Notice of Removal was timely, the Court finds no basis to conclude that it has federal question subject matter jurisdiction over the present litigation. As stated by the Supreme Court in *Merrell Dow Pharmaceuticals, Inc., v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986),

Article III of the Constitution gives the federal courts power to hear cases "arising under" federal statutes. That grant of power, however, is not self-executing, and it was not until the Judiciary Act of 1875 that Congress gave the federal courts general federal-question jurisdiction. Although the constitutional meaning of "arising under" may extend to all cases in which a federal question is "an ingredient" of the action, *Osborn v. Bank of the United States,* 22 U.S. 738, 9 Wheat. 738, 823, 6 L.Ed. 204 (1824), we have long construed the statutory grant of federal-question jurisdiction as conferring a more limited power. *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 494–495, 103 S.Ct. 1962, 1971–1972, 76 L.Ed.2d 81 (1983); *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 379, 79 S.Ct. 468, 483, 3 L.Ed.2d 368 (1959)....

*Id.* at 807, 106 S.Ct. 3229. While it is clear that federal courts have subject matter jurisdiction over claims which are created by a federal statute, the Supreme Court has also recognized that a case may arise under federal law "where the vindication of a right under state law necessarily turned on some construction of federal law."[2] *Franchise Tax Board,* 463 U.S. at 9, 103 S.Ct. 2841; *Merrell Dow,* 478 U.S. at 809, 106 S.Ct. 3229. As summarized recently by the Sixth Circuit,

> [The Supreme Court] clearly left open the possibility of federal jurisdiction even in the absence of an express or implied federal cause of action, if a substantial federal question of great federal interest is raised by a complaint framed in terms of state law, and if the resolu-

tion of that federal question is necessary to the resolution of the state law claim. *Long v. Bando Mfg. of America, Inc.,* 201 F.3d 754, 759 (6th Cir.2000). Following this standard, the Court may have subject matter jurisdiction over Plaintiff's claims if they require resolution of a substantial question of federal law.

■ In determining whether a court has federal subject matter jurisdiction, the court ordinarily begins by examining the plaintiff's well-pleaded complaint. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The "well-pleaded complaint rule" provides that "the plaintiff is the master of the complaint, that [for removal to be proper] a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Warner,* 46 F.3d at 533. After "[e]xamining only those allegations which are properly raised in a well-pleaded complaint, the court must then determine whether the substance of those allegations raises a federal question." *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914); *see Sable v. General Motors Corp.,* 90 F.3d 171, 174–75 (6th Cir.1996) ("arising under" jurisdiction existed where plaintiff's state law tort claim was premised on defendants' breach of a duty created under federal law).

■ In their Notice of Removal, Defendants assert, without any specific factual allegations, that the Court has original jurisdiction under 28 U.S.C. § 1331. In their Opposition Memorandum (Doc. # 4), they assert that the references to federal law in

---

**2.** To make clear, a state law claim which "arises under" federal law remains a state law claim. Unlike claims which are completely preempted, *i.e.,* claims within the purview of § 1132(a) of the Employee Retirement Income Security Act or § 301 of the Labor Management Relations Act, they are not converted into claims under a federal statute. Rather, they remain state law claims over which federal courts have original jurisdiction.

the Second Amended Complaint indicate that Plaintiff's claims are "founded on a claim or right under the Constitution, treaties, or laws of the United States." (Doc. # 4 at 4). In essence, Defendants argue that Plaintiff's references to the United States Constitution as a source of his interests in Count Eight (breach of the duty of good faith and fair dealing/ bad faith contract) and his references to the United States Constitution and federal statutes as a source of public policy in Count Ten (discharge and retaliation in violation of public policy) render those claims as "arising under federal law." [3]

In *Long, supra,* the Sixth Circuit specifically addressed whether a plaintiff's state law claim for wrongful discharge in violation of public policy, which was based, in part, on federal statutes arose under federal law, thus providing the district court with federal question subject matter jurisdiction. In concluding that the plaintiff's claim did not arise under federal law, the Court of Appeals relied upon *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), in which the Supreme Court held that a claim does not "arise under" federal patent law if the complaint states alternate theories for that claim, only one of which requires resolution of a patent law question. 201 F.3d at 759–60. In light of *Christianson,* the Sixth Circuit reasoned that "there is no federal question jurisdiction when the complaint on its face states alternate theories supporting a state-law claim, at least one of which does not involve a federal question." *Id.* at 760.

Turning to the instant lawsuit, in paragraph 144 in Count Eight, Plaintiff alleges that Defendants' duties "constitute liberty and property interests recognized under the First and Fourteenth [A]mendments [to] the United States Constitution *as well as corresponding provisions in the Constitution of the State of Ohio.*" (2d A.Compl.¶ 144)(emphasis added). Paragraph 150 of Count Ten alleges that a clear public policy against retaliation and discrimination exists "that is manifested in the Constitution of the United States *and/or Constitution of the State of Ohio,* federal *and/or state statute and/or administrative regulation,* and/or in the common law[,] including but not limited to *O.R.C. Section 4112 ....*" (*Id.* ¶ 150) (emphasis added). For both causes of action, the interests and policies upon which Plaintiff has relied are embodied in both federal and state law. Thus, on its face, Plaintiff's Second Amended Complaint states alternate theories supporting his state-law claims of breach of the duty of good faith and fair dealing and of wrongful retaliation and discharge in violation of public policy, at least one of which does not involve a federal question. Therefore, it is clear that the resolution of federal law is not necessary or essential to the resolution of those state law claims. Federal law does not predominate in this case. Accordingly, the Court concludes that Plaintiffs' state law claims do not "arise under" federal law.

### III. *Attorney's Fees and Costs*

█ 28 U.S.C. § 1447(c) provides, in pertinent part: "An order remanding the case may require payment of just costs and any actual expenses, including attor-

---

**3.** As stated, *supra,* Defendants also point out that Plaintiff has cited to *Blume,* which was decided by a federal court in this District. The Court notes that the page referenced in *Blume* (533 F.Supp. at 517) provides the elements for a claim of equitable estoppel. In addition, Plaintiff's citation to *Blume* is imme-

diately preceded by a citation to Ohio Jury Instructions § 253.12. Plaintiff's citation to *Blume* in this context merely indicates that elements that he believes he must establish for his equitable estoppel claim, and it does not create federal subject matter jurisdiction.

ney fees, incurred as a result of the removal." The decision to award or to deny attorney fees is within the district court's discretion. *Morris v. Bridgestone/ Firestone, Inc.*, 985 F.2d 238, 240 (6th Cir. 1993); *Ahearn v. Charter Twp. of Bloomfield*, 149 F.3d 1182, 1998 WL 384558 (6th Cir.1998). "A threshold determination of bad faith, improper purpose, or vexatious or wanton conduct [is] not necessary." *Morris,* 985 F.2d at 240; *see Bucary v. Rothrock*, 883 F.2d 447 (6th Cir.1989) (district court may award costs without evidence that removal was frivolous or in bad faith). However, the court is not required to award attorney fees whenever removal is found to be improper. *Ahearn*, 149 F.3d 1182, 1998 WL 384558 at *2, n. 2. An award of attorney fees is inappropriate "where the defendant's attempt to remove the action was 'fairly supportable', or where there has not been at least some finding of fault with the defendant's decision to remove." *Id.* (internal citations omitted). Conversely, "a court abuses its discretion by refusing to award fees where the defendant's argument for removal was devoid of even fair support." *Id.*

 In the present case, Plaintiff's claims for relief were clearly pursuant to state law, and the Court finds no reasonable basis to conclude that any state law claims arose under federal law, particularly in light of the Sixth Circuit's decision in *Long, supra.* Accordingly, the Court concludes that an award of attorney fees and costs would be fair and equitable under these circumstances. Plaintiff is ORDERED to submit evidence, within fourteen (14) days from date, as to the amount of the attorney fees and costs that he incurred in filing this Motion for Remand. Defendants will then have a like period of time to file anything desired in response thereto.

For the foregoing reasons, Plaintiffs' Motion for Remand (Doc. # 2) is SUS-

TAINED. Plaintiff is ORDERED to submit evidence of the amount of the attorney fees and costs that he incurred in filing this Motion for Remand within fourteen (14) days from date.

The captioned cause is REMANDED to the Montgomery County Court of Common Pleas from whence it cometh.

Judgment to enter accordingly.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.