Filed 7/25/14  Turchik v. M.A.G. Engineering & Mfg. co. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DAVID M. TURCHIK, | |
| Plaintiff and Appellant, | G047856 |
| v. | (Super. Ct. No. 30-2010-00335483) |
| M.A.G. ENGINEERING & MANUFACTURING CO., INC., et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Geoffrey T. Glass, Judge.  Affirmed.

David M. Turchik, in pro. per., for Plaintiff and Appellant

Law Office of Thomas R. Chapin and Thomas R. Chapin for Defendants and Respondents.

\*        \*        \*

David M. Turchik filed this lawsuit against several defendants, alleging they committed various wrongs that denied him the benefits of an agreement by which he had assigned the right to use his patented technology to defendant M.A.G. Engineering & Manufacturing Co., Inc. (MAG) for use in the manufacture of a plumbing device, in exchange for royalty payments. Turchik alleged not only a breach of the royalty agreement, but also that MAG breached a related independent contractor agreement with him. Following a court trial, judgment was entered in favor of Turchik and against MAG in the amount of $25,000, and in favor of Turchik and against the Howard and Veronica Allenbaugh Family Trust (the Trust) – to which MAG had assigned its contractual rights to the patented technology – in the amount of $10,000. The court found against Turchik on his claim for breach of the independent contractor agreement, and it entered judgment in favor of each of the remaining defendants named in Turchik's second amended complaint.

Turchik appeals, arguing primarily that his claims arose out of federal patent law, and thus the federal district court acted improperly when it remanded this case to our trial court following removal. He also claims the trial court's own errors resulted in both the undervaluation of the two royalty claims he prevailed upon and the improper rejection of his remaining claims. According to Turchik, the trial court erred by: (1) denying his motion to resolve certain patent law issues in advance of trial and by failing to resolve requested material facts relevant to those issues at trial; (2) failing to acknowledge his recorded security interest in his patent, which purportedly prevented MAG from assigning its rights to the patented technology to the Trust; (3) failing to recognize that MAG's nonpayment of royalties created a lien against the assigned patent rights, which Turchik was entitled to foreclose upon; (4) improperly calculating past due royalties based on contradictory evidence; and (5) erroneously determining Turchik waived any claim for further payment under his independent contractor agreement by agreeing to work without pay.

2

We find none of these contentions persuasive and affirm the judgment. Assuming, as Turchik contends, that his claims arose under federal patent laws – and thus were subject to exclusive federal jurisdiction – we cannot provide him any relief. The federal courts are a wholly separate system, and we have no authority to review the propriety of the remand order issued by the federal district court. Moreover, we cannot fault our own trial court for failing to resolve claims over which it lacked jurisdiction. Perhaps more to the point, our trial court has no power to compel the federal court to exercise its own jurisdiction. And nor do we.

And as to Turchik's state law claims based on breach of the agreement to pay royalties and breach of his independent contractor agreement, we are obligated to uphold the trial court's decision if it is based on substantial evidence. And in this case it was. The mere fact the evidence was conflicting on key points does not provide a basis for reversal.

FACTS

The trial court issued a lengthy statement of decision in this case, and we base our facts on the court's findings. (*Peat, Marwick, Mitchell & Co. v. Superior Court* (1988) 200 Cal.App.3d 272, 277-278 ["The facts . . . are taken almost entirely from the trial court's findings of fact. These findings are binding on this court unless unsupported by substantial evidence"].)

Turchik invented a process of concentrating the gas escaping from a carbon dioxide cartridge into a burst of air. He called this process "Air Burst Technology." He believed the process might be useful as part of a method of unclogging toilets, and applied for a patent for this "Air Burst Toilet Flush" idea.

Lacking the manufacturing capability to exploit this plumbing idea, Turchik approached his uncle, Howard Allenbaugh, who was the owner of MAG, a small

3

company that produced security apparatus. In March 2002, the two men entered into a written agreement whereby Turchik assigned to MAG his "entire right, title, and interest" in the technology disclosed in his patent application and "all Letters Patent of the United States which may be granted thereon." In consideration for that assignment, MAG agreed to pay Turchik a royalty of 30 cents for each toilet flush product it sold while the patent application was pending, and 50 cents per product after the patent issued. The patent subsequently issued.

Allenbaugh died in 2003. His son, Mark Allenbaugh (Mark) took over MAG in January 2004. Shortly thereafter, Mark was asked to sign documents prepared by MAG's attorneys at Allenbaugh's request. One of those agreements transferred MAG's rights to the toilet flush patent to the Trust, with an agreement that MAG would pay the Trust royalties of $1 per product. Concurrently with that agreement, MAG and Turchik agreed MAG would pay Turchik's royalties twice per year, rather than on a monthly basis as previously agreed.

Although the parties disputed the number of toilet flush products MAG sold, the court characterized the sales as "decent but not phenomenal" based largely on the evidence submitted by defendants. By 2008, however, MAG was having difficulty filling orders because of problems with suppliers.

According to the court's findings, MAG paid Turchik the appropriate royalty amount for the products sold prior to 2008. However, MAG's last payment to Turchik was in March 2008, and was only a partial payment of what was owed, due to MAG's financial problems. The court calculated the amount of unpaid royalties due Turchik for sales in 2008 and 2009 as "about $25,000." MAG ceased doing business in February 2010.

Turchik also entered into an independent contractor agreement with MAG in March 2005. The agreement obligated him to consult with MAG concerning research and development of several product lines. In exchange for those consulting services,

4

MAG agreed to pay Turchik $3,000 per month.  The agreement was for an indefinite term, subject to termination on 30 days written notice.  However, the court concluded that relationship terminated without a written notice in March 2008, following what the court characterized as a "confrontation" between Mark and Turchik about MAG's failure to pay his royalties on time, and its failure to provide him with an accounting of sales.

In any event, as Turchik conceded, Mark had told him approximately a year after the independent contractor agreement was entered into that MAG could no longer afford to pay him the $3,000 monthly payment, and Turchik had agreed to continue providing consulting services thereafter without payment.

Ultimately dissatisfied with the treatment he received, and convinced MAG was not accurately reporting its sales on the patented products, Turchik filed suit in the superior court.  His second amended complaint – the only one in our record – states causes of action for breach of contract, fraudulent transfer of assets, unfair competition, tortious interference with contract, breach of the covenant of good faith and fair dealing, accounting and declaratory relief.  The claims for fraudulent transfer, unfair competition and tortious interference with contract were based on MAG's transfer of its patent rights to the Trust.  Turchik alleged the transfer was intended to avoid MAG's obligation to pay him royalties under the assignment agreement and to hinder his ability to enforce that debt.

The claim for declaratory relief asked the court to adjudicate ownership of the patents – which Turchik alleged belonged to him alone – and to determine the parties' rights accordingly.

After Turchik filed his complaint, the Trust licensed his patented technology to a third party company, which then sold approximately 20,000 additional toilet flush products.  In the event his effort to unwind MAG's assignment of the technology to the Trust was unsuccessful, Turchik claimed the right to enforce MAG's royalty obligation against the Trust, with respect to those sales.

5

Trial was set for April 16, 2012. On April 2, 2012, the court heard Turchik's motion to file an amended complaint, adding additional claims and additional parties. The court ruled that it was "inclined to grant" the motion, but would sever any new causes of action and new parties for a later trial.

On that same date, Turchik filed a motion "pursuant to United States Code, Title 35, Section 256," (italics omitted) requesting a pretrial hearing before a Special Magistrate Judge, "to formally affirm, prior to trial, [his] legal standing as true first inventor and true legal owner of the intellectual property involved in this lawsuit." Although no ruling on this motion appears in our record, we presume it was denied.

One week later, on April 9, Turchik removed the case to federal court on the basis that his claims arose under federal patent law, and thus removal was proper under Title 28 United States Code section 1454. That same day, the federal district court issued an order for Turchik to show cause why it should not remand the case back to state court. The court's order acknowledged that any party, even a plaintiff, could remove a case to federal court if it arose under federal patent law, but that remand appeared proper because Turchik's complaint asserted only claims arising under state law.

Turchik responded to the order to show cause on April 16, 2012, but to no avail. The federal court ordered the case remanded to state court on April 18, 2012.

In May 2012, Turchik filed a motion seeking "Orders of Declaratory Relief" from the trial court. Specifically, Turchik asked the court to declare the immediate rescission of the patent assignment agreement, and to order defendants to disclose information necessary to "resolve issues pertaining to first true inventor, true ownership and ownership rights of the licensed/assigned intellectual property involved in this matter." The motion was based on the information contained in Turchik's "'[w]rapper file' documents pertaining to inventorship, ownership, licensing and assignment, as recorded with the United States Patent and Trademark Office . . . ." Although no ruling on this motion appears in our record, we presume it was denied.

6

The case was tried to the court, sitting without a jury. Following the court's issuance of a tentative decision, both sides requested a written statement of decision – although the court characterized Turchik's 25-page request as "more in the nature of further argument." The court's statement of decision, itself 21 pages long, rejected many of Turchik's claims, and largely credited defendants' evidence concerning the number of patented plumbing devices MAG sold. The court nonetheless found MAG liable for $25,000 in past due royalties, representing the unpaid portion of royalties due from acknowledged sales in 2008 and 2009.

The court also found that MAG's subsequent assignment of Turchik's patents to the Trust, which the court determined had been a valid and enforceable assignment even in the absence of notice to Turchik, necessarily required the Trust to assume MAG's obligation to pay Turchik royalties on any products sold. Consequently, the court concluded the Trust was liable to Turchik in the amount of $10,000, representing a royalty of 50 cents for each of the 20,000 products sold under the Trust's agreement with the third party company.

DISCUSSION

*1. The Federal Patent Claims*

Turchik's primary complaint on appeal is that he was denied the opportunity to prove his ownership of the patents at issue, and to enforce an alleged security interest and other remedies available to him as the inventor under federal patent law. He argues the federal court erred when it remanded the case to state court following removal, and that the trial court erred because it "failed to resolve the dispute of inventorship between Turchik and the Defendants, and would not have had jurisdiction to do so anyway."

7

If, as Turchik asserts, the federal court erred by remanding the case to the superior court, we could do nothing to remedy that error. Errors committed by federal district courts are reviewable, if at all (see 28 U.S.C. § 1447(d) [stating with limited exception that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise"]), by *federal* courts of appeals.

That being said, however, we see no clear error in the federal court's remand order. While it is true that an action asserting claims "arising under any Act of Congress relating to patents," may be removed to federal court by the plaintiff who originally filed in state court. (28 U.S.C. § 1454 (a) & (b)(1) [action arising under patent law "may be removed by any party"]), the definition of such an action is fairly stringent. A claim only "arises under" patent law if the "well-pleaded complaint establishes either that federal patent law *creates* the cause of action or that the plaintiff's right to relief *necessarily depends on* resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." (*Christianson v. Colt Indus. Operating Corp.* (1988) 486 U.S. 800, 809, italics added.) Moreover, "a claim supported by alternative theories in the complaint may not form the basis for [patent law] jurisdiction unless patent law is essential to each of those theories." (*Id*. at p. 810.) In other words, even if Turchik's causes of action arise in the context of patent law or involve rights created under patent law, if those causes of action are *also* independently supported by state law, they do not *arise under patent law* for purposes of this test.

Here, Turchik's complaint is stated exclusively in terms of state law causes of action. The only cause of action pleaded which even references his rights under federal patent law is his eighth cause of action for declaratory relief. In that cause of action, Turchik alleges he is entitled to be declared the "true owner" of the patents, and to enforce a security interest in them which was perfected under federal patent law. But even that cause of action – which the trial court characterized as seeking a "hodge[]podge

8

of remedies" – expressly *incorporates* his seven prior state law causes of action, and even alleges a right to relief based on defendants "evasive and destructive" tactics during the litigation itself. Thus, taken as a whole, that cause of action does not constitute a claim which arises purely under patent law.

And as to the state court, Turchik's own assertion of error reveals the central flaw of his argument. If the trial court *had no jurisdiction* to adjudicate his "inventorship" claim or his other claims arising under patent law (see 28 U.S.C. § 1338(a) ["[n]o State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents"]), it could not have erred by refusing to do so. Instead, the trial court properly confined itself to adjudicating Turchik's state law claims.

2. *Liability for "Transfer and Conversion" of Intellectual Property*

Turchik also contends the court erred by failing to hold defendants liable for "licensing his intellectual property to other entities, therefore willfully and recklessly inducing infringement and becoming contributory infringers themselves." There are several flaws in this contention.

First, the evidence was conflicting on the issue of defendants' licensing efforts. Resolution of such conflicts is the job of the trial court, and we cannot reweigh the evidence on appeal. "'Applying the substantial evidence test on appeal, we may not reweigh the evidence, but consider that evidence in the light most favorable to the trial court, indulging in every reasonable inference in favor of the trial court's findings and resolving all conflicts in its favor. [Citations.] The question on appeal is whether the evidence reveals substantial support – contradicted or uncontradicted – for the trial court's conclusion . . . . We uphold the trial court's findings unless they so lack evidentiary support that they are unreasonable.'" (*Richardson v. City and County of San Francisco Police Com.* (2013) 214 Cal.App.4th 671, 692.)

9

Second, it's not at all clear how *licensing* intellectual property would "induc[e] infringement," as Turchik asserts. We could not fault the trial court for failing to conclude it did. And third, there is no evidence that such inducement, if it occurred, caused measurable damage to Turchik. For all of these reasons, this contention fails.

In a related contention, Turchik also asserts that Mark, who is apparently an attorney but not licensed to practice in California, nonetheless wrongfully acted as "General Counsel" for MAG. Turchik surmises that if Mark had not engaged in that improper conduct, MAG's ownership of his patents would not have been wrongfully transferred to the Trust "and this lawsuit would never have been necessary." The success of this assertion would require us to draw several factual inferences which are inconsistent with the facts supporting the trial court's decision. We cannot. "'''[W]hen two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court.'''" (*Perez v. VAS S.p.A.* (2010) 188 Cal.App.4th 658, 683-684.)

### 3. Calculation of Past Due Royalties

Turchik asserts the trial court made errors in calculating his past due royalties. Most fundamentally, he claims the court "did not properly weigh the evidence" pertaining to the number of patented devices MAG sold over the years. This assertion is not cognizable on appeal, as we cannot reweigh the evidence considered by the trial court. (*Richardson v. City and County of San Francisco Police Com., supra*, 214 Cal.App.4th at p. 692.) It was for the trial court, and not us, to sift through the conflicting evidence and determine the facts. And because Turchik is the plaintiff, and has the burden of proving his damage claim, any doubts the court has regarding the numbers should have been properly resolved against him. (*Buzgheia v. Leasco Sierra Grove* (1997) 60 Cal.App.4th 374, 394 [explaining "the tie-breaking tool necessary to our system of factfinding: When in doubt, find against the party with the burden of proof"].)

10

Turchik also claims, however, that the court erred as a matter of law when it failed to include MAG's sales of "replacement packs" for the toilet flush product, in its calculation of the royalties MAG was obligated to pay. But in arguing that the sale of these replacement packs also generated an obligation to pay royalties, Turchik points to the agreement entered into between MAG and the Trust, *not the one he entered into with MAG*. Only that latter agreement governed *his* rights. And to the extent Turchik is relying on a distinct claim, arising solely out of federal patent law, to receive royalty payments for the replacement packs, the contention is doomed by Turchik's acknowledgment that the trial court lacked jurisdiction to adjudicate the claim.

For all of these reasons, Turchik's claim of error in calculating his past due royalties fails.

*4. Determination of Waiver in Connection With Independent Contractor Agreement*

Turchik's final contention is that the court erred in concluding he waived any claim for further payment under his independent contractor agreement with MAG. Turchik's attack on this conclusion is two-fold: He first suggests the court's determination that he had agreed to forego payment under the independent contractor agreement was based on defendants' "misstated and twisted" version of his testimony. He claims that contrary to defendants' assertion, he never agreed to "waive[] his right to payment," but instead he merely agreed to "*temporarily* continue working without pay in order to help MAG fund the research of new . . . products [he] had been developing." This is a distinction without a practical difference. Unless Turchik's agreement to "temporarily" work without pay was accompanied by proof that the parties had later agreed to *terminate* that temporary arrangement, the waiver of payment was effectively a permanent one.

Turchik's second contention is that even assuming the parties had orally agreed to modify the terms of the agreement, that modification was ineffective because

11

the agreement itself specified it could be modified *only in writing*. But the general rule that "[a] contract in writing may be modified by a contract in writing" (Civ. Code, § 1698, subd. (a)) is subject to exceptions. One exception is that "[a] contract in writing may be modified by an oral agreement *to the extent that the oral agreement is executed by the parties*." (Civ. Code, § 1698, subd. (b), italics added.) That exception applies without regard to whether the agreement specifies it can only be modified in writing. (Compare, Civ. Code, § 1698, subd. (c) [stating that "*[u]nless the contract otherwise expressly provides*, a contract in writing may be modified by an oral agreement supported by new consideration"].) (Italics added.) Here, the modification was executed to the extent of every month Turchik continued working without payment.

In any event, the court did not find that the agreement had been *modified.* Instead, what the court determined was that Turchik had *waived* his right to payment. Civil Code section 1698 also makes clear that the general prohibition against oral modifications of written agreements does not preclude a determination that a party waived the benefit of an agreement. (Civ. Code § 1698, subd. (d).) And while Turchik claims that a waiver is invalid unless supported by consideration, his own description of his "temporar[y]" agreement to continue working without pay supplies that element. According to Turchik, the point of his working without pay was to facilitate MAG's "fund[ing] the [research] of new . . . products [he] had been developing," and Turchik concedes it was "in [his] best interest to increase the market share of these products since he had expected to receive long-term royalties as licensor . . . ." Thus, MAG's promise to funnel resources into research supplied the consideration for Turchik's agreement to continue providing independent contractor services without pay.

Finally, the alleged fact that Mark promised to "*fully reimburse* Turchik when MAG had the money to do so" changes nothing. Even if we assumed that promise had been made, the trial court's factual findings would require us to infer that MAG

12

never did have sufficient money to make the reimbursement.  Thus we could not conclude the promise, even if made, had been broken.

For all of these reasons, we reject Turchik's contention the court erred in determining he waived his claim to further payment under the independent contractor agreement.

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

ARONSON, J.

IKOLA, J.